### City of Jackson *v.* Solomon Shlomberg.

1. Municipalities.   *Code 1892, chapter 93.*   *Acceptance of code chapter.*

    By § 3035, chapter 93, code 1892, declaring that after the chapter became operative, every municipality should be governed by its provisions, but that any municipality might, within twelve months, "elect not to come under the provisions hereof," power was given municipalities, affirmatively, to accept the provisions of the chapter and be governed thereby.

2. Same.   *Effort to rescind acceptance ineffectual.*

    Its corporate authorities having formally resolved to accept the provisions of the code chapter, the city of Jackson became bound thereby, and subsequent action of the authorities purporting to rescind the resolution of acceptance, though within the twelve months, was ineffectual.

Appeal from a judgment of Hon. Tim E. Cooper, one of the judges of the supreme court, in a *habeas corpus* proceeding.

The relator, Solomon Shlomberg, was arrested on a charge of violating an ordinance of the city of Jackson relating to the sale of second-hand clothing, and was discharged from custody by the judgment appealed from. The ordinance in question was passed June 24, 1892, in accordance with the provisions of the former charter of the city, but not by a yea and nay vote, as required by § 3007, chapter 93, code 1892. It is conceded that the relator was properly discharged, if at the time mentioned the city of Jackson was governed by the provisions of said code chapter, and not by the old charter. Hence the only questions for consideration are: (1) As to the effect of the resolution of the corporate authorities, passed

April 12, 1892, accepting the code provisions; (2) the effect of the resolution adopted by them June 7, 1892, rescinding the resolution of acceptance, and rejecting the provisions of the code chapter, the last resolution having been passed prior to the adoption of the ordinance in question. The opinion contains a further statement of the case.

So much of § 3035, code 1892, as is necessary to be considered, is as follows:

" From and after the date that this chapter becomes operative, every municipality in the state shall exercise the powers conferred herein on the class to which it belongs, and shall be governed by the provisions thereof. But an existing municipality, by resolution of its corporate authorities, entered of record and certified to the secretary of state within twelve months after this chapter becomes operative, may elect not to come under the provisions hereof. The secretary of state shall make a record of such certificates received by him. The provisions of this chapter shall not apply to a municipality so signifying the wish of its corporate authorities, unless thereafter, by a majority vote of the electors therein, to be cast at a general or special election for the purpose, it be determined to come under the operation of the chapter."

*Brame & Alexander,* for appellant.

1. Chapter 93 of the code went into effect April 2, 1892, and was applicable to the city of Jackson and all other municipalities from that date until the *rejection* of the same in accordance with § 3035.

2. Said § 3035 authorizes the rejection of the provisions of the chapter, and directs how this shall be evidenced and certified. There is no provision for *accepting,* and this is not contemplated or required.

3. This being true, the action of the authorities April 12, 1892, purporting to accept the code provisions, was gratuitous and ineffectual.

4. Before the passage of the ordinance of June 24, 1892,

and within the twelve months, the authorities, by resolution, elected not to come under the provisions of the code chapter. This was done strictly in compliance with the statute, and had the effect to change the legal status of the city. The former charter was in force from and after that time, and the ordinance, under which relator was arrested, was duly passed in accordance with its requirements.

*Calhoon & Green,* for appellee.

1. The policy was to regard all cities and towns in under the code. The privilege was given to *elect,* within twelve months, not to come in. The right to choose not to come in under § 3035 of the code carried with it the right to elect to come in. Mere non-action for twelve months would be construed as an acceptance. Solemn acceptance during the time ought to have the same effect. This argument is strengthened by a consideration of the fact that an election by the people is only allowed in case of *rejection* by the corporate authorities.

2. Section 3031 of the code contemplates the power of acceptance. It uses the expression, "elect to come in." Section 3037 requires the governor to classify all municipalities under the chapter. This implies the power of acquiescence and acceptance. Otherwise he could not classify for twelve months.

3. If, by mere acquiescence for twelve months, the authorities could accept, and thus bind the municipality, surely they could do so by solemn ordinance.

4. If the authorities could accept, and then rescind and reject, there might be various changes of the status of the municipality, which would lead to great confusion.

CAMPBELL, C. J., delivered the opinion of the court.

This case presents the question whether the city of Jackson is subject to the chapter on municipalities, contained in the code of 1892, or not. That chapter was, by act approved

April 2, 1892, declared to be in force from that date. On April 12, 1892, the mayor and aldermen of Jackson declared their acceptance of said chapter, and subsequently passed some ordinances with reference to the position of the city, as governed by the chapter on municipalities in the code. On June 7, 1892, an ordinance was adopted by the mayor and aldermen of Jackson rescinding the acceptance of the chapter of the code mentioned, and declaring it null, and they elected not to come under said chapter. This resolution was duly certified to the secretary of state, and by him recorded. The action of the mayor and aldermen, in accepting the chapter, was not communicated by the municipal authorities to any state official, but certain citizens obtained a transcript of, the record of the proceedings of the board of mayor and aldermen in accepting the code chapter, and presented it to the governor, who issued his proclamation declaring Jackson a city according to the chapter on municipalities in the code of 1892.

The argument by counsel for the city is that the chapter on municipalities in the code of 1892 was put in force on April 2, 1892, as to all municipalities in the state, with the right in each to "*elect not to come under*" its provisions, by resolution of its corporate authorities, entered of record and certified to the secretary of state within twelve months after April 2, 1892, in which case the municipality should not be subject to the chapter, unless the electors of the municipality should cast a majority of votes for the code provisions at an election provided for in such condition of things; that on April 2, 1892, every municipality became immediately subject to the chapter of the code on the subject, without any action of its corporate authorities, and so continued, unless they elected not to come under it, when it would cease to be under it until, if ever, the electors should demand an election, and decide to come under the code provisions; that the awkward conditions and inconvenient results possible from such vacillation cannot affect the interpretation of the statute, but

furnish an argument to influence action merely; that no provision is made for acceptance by corporate authorities of the chapter on municipalities, or certifying such action to anybody; and nothing is said in the law about coming under the chapter, and, therefore, the express declaration of the first sentence of § 3035 of the code made every municipality subject at once to the provisions of the chapter. Therefore, it is said that the action of the mayor and aldermen of Jackson, accepting the code chapter, was vain and nugatory, because there is no warrant for it in law; and that their action, electing *not to come under* the chapter, was in pursuance of law, and had the effect to withdraw the city from the operation of the law of municipalities in the code.

There is much ground for this argument, and it cannot be lightly dismissed. It deserves, and has received, careful examination. If the first paragraph of § 3035 of the code stood alone, in full force as expressed, there would be no answer to the argument that every municipality became subject to the chapter by virtue of the act of April 2, 1892, and could get from under it only by the election of its corporate authorities "*not to come under*," made and certified as provided for, and afterwards might get in under the code by the vote of its electors duly certified. The serious consequences of such an interpretation, while not sufficient to justify departure from the language of the statute, justly impel to an earnest search for another view contained in, or consistent with, the language of the law. The will of the legislature is to be sought by considering all it has said on the subject, and necessary implication may modify express language, if the intent of the law-maker is apparent.

It is manifest that the chapter under consideration was framed on the view that it would become immediately operative, as part of the code containing it, and be in full force as to all municipalities, from the time when it should become law, without and independent of any municipal action. There is internal evidence of this, and it is historically true.

Therefore, the declaration of the first sentence of § 3035, that every municipality shall be governed by this law from the time it becomes operative. But the purpose to subject all municipalities immediately to the provisions of the code, by virtue of its adoption, was abandoned, and it was put in the power of the corporate authorities of any municipality, at any time within twelve months from the date of passing the act, to *"elect not to come under"* the law. The language is not *elect to get out* or from under, but *"elect to come under,"* implying that all were from under, and that they might elect to come under. In § 3031 the language is: *"If any city, town or village shall elect to come under,"* etc. By § 3036, it is declared that certain sections of the chapter shall apply to all municipalities from the time the chapter becomes operative. Why specify certain sections if all were of force? By § 3037, existing municipalities are to be classified according to population, by the United States census of 1890, and it was made the duty of the governor, as soon as this chapter becomes operative as to any municipality, to issue his proclamation, assigning it to its proper class. If the law was at once operative as to all municipalities, it was the duty of the governor to issue his proclamation, assigning every one to its class immediately after the law was passed. Is it conceivable that it was intended that this should occur, and that, after proclamation thus made, and of which the courts are required to take judicial notice—because executive acts are made of record, and thus furnish authentic information— the municipality which was under, might elect not to come under the code provisions, and thereby change its status, render useless and nugatory what had been done, and, after an experience of less than twelve months under the code, elect not to come under, and, thenceforth, be from under, but liable to come under at any time in the future, when a "majority vote" of its electors should declare for it? Section 3039 of the code speaks of a municipality *"which has not come under,"* etc. Why the various expressions about electing not

to come under, and coming under the provisions of the chapter, if all were under it by force of the law and regardless of their election? *Election* implies free choice—the power to accept or reject.

The scheme was to have all municipalities governed by the code. The chapter was drawn with that view. Objection was made, and its structure was so altered as to change the scheme, by allowing twelve months to every municipality to elect not to come under. If one should not elect not to come under, it should be under. Unless action should be taken against it, the mere effluxion of twelve months should fix the status of the municipality as under the code. And so solicitous was the legislature to have all municipalities under the code, that provision was made to enable the electors to reverse the action of corporate authorities which should reject the chapter, while no provision was made for getting from under the chapter by the action of electors, if the corporate authorities merely remained silent and permitted the lapse of twelve months.

Manifestly, the legislative desire was to bring all municipalities under the operation of the code chapter, but it was not willing to enforce this wish against the will of the municipality, and so shaped the law as to place it in the power of each to reject, at any time within twelve months, by action of its corporate authorities, subject to be overruled at any time by a majority of the electors at an election provided for. This right to reject carries with it the right to accept, and when the corporate authorities, which might irrevocably come under the chapter by non-action, accept the chapter, there is concurrence of the will of the legislature and the municipality, and the status of the latter is fixed.

We agree with the learned counsel for Jackson in the assertion that there is no middle ground, and that every municipality in the state was at once, by force of the law and without any action, subject to the operation of the code chapter; or that its action was suspended for twelve months,

in which the municipality might elect not to come under, unless within the time it should relieve the suspense, end the uncertainty, and fix its status by accepting as its fundamental law that which the legislature commended to it, and manifested solicitude for it to accept. We choose the latter view as the better one, fully warranted by the language of the law, and promotive of the legislative purpose, while it avoids the many evils of a contrary view.

The mayor and aldermen had the power to accept the provisions of the code chapter, and from that time Jackson was subject to its provisions.

*Affirmed.*